UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| LINA HARALAMBOUS, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:13CV1916 (JCH) |
| v. | : |  |
| BRIAN HUBBS et al., | : |  |
| Defendants | : | MAY 28, 2015 |

**RULING RE: MOTION FOR SUMMARY JUDGMENT IN PART (DOC. NO. 47)**

Plaintiff Lina Haralambous ("Haralambous") brings this action against the defendants, Middletown Police Detective Brian Hubbs ("Hubbs") and State Trooper Michael Kudish ("Kudish"), pursuant to section 1983 of title 42 of the United States Code.  The Complaint arises from an incident that took place on January 31, 2011, in which Hubbs shot the plaintiff's son, Christopher Haralambous, while arresting him in the driveway of plaintiff's residence.  Complaint ("Compl.") (Doc. No. 1).  Haralambous alleges that, during the course of this incident, defendants subjected her to unreasonable force and an unlawful seizure of her person in violation of the Fourth Amendment.

Defendants have moved for summary judgment in part as to the excessive force and unlawful seizure claims against Hubbs, and for summary judgment as to all claims against Kudish.  Defendants' Motion for Summary Judgment in Part ("Mot. Sum. Judg.") (Doc. No. 47).  For the reasons that follow, the Motion for Summary Judgment in Part is **GRANTED** in part and **DENIED** in part.

1

**I.     FACTS**

On January 31, 2011, police officers assigned to the State Narcotics Task Force ("SNTF"), including both defendants, orchestrated a controlled buy of marijuana from the plaintiff's son, Christopher Haralambous.  Defendants' Local Rule 56(a)(1) Statement ("Def.'s Loc. R. 56(a)(1) Stmt.") (Doc. No. 47-2) ¶¶ 1, 3, 5; Plaintiff's Local Rule 56 Statement ("Pl.'s Loc. R. 56 Stmt.") (Doc. No. 48-1) ¶¶ 1, 3, 5.  The lead officer of the operation, Detective Matthew Moskowitz ("Moskowitz"), observed the controlled sale to a confidential informant in a Manchester, CT parking lot.  Pl.'s Loc. R. 56 Stmt. ¶ 4.  Following the transaction, Christopher Haralambous drove away in a gray Audi S4.  Id. ¶ 5.  The confidential informant reported to Moskowitz that Christopher Haralambous had approximately one pound of marijuana and a digital scale in his Audi, which Moskowitz in turn reported to the other SNTF officers, who followed the Audi.  Id. ¶ 6.  Moskowitz conducted a check of the Audi's registration plates and determined it was registered to L. Haralambous at an address on Weir Street in Glastonbury.  Id. Defendant Hubbs advised Moskowitz that the Audi was turning onto Weir Street, at which point Moskowitz decided that the other officers should stop Christopher Haralambous in the driveway and detain him.  Id.  ¶ 7.

The parties dispute the precise sequence of events that occurred next. However, it is undisputed that Hubbs shot Christopher Haralambous and then, along with Kudish, forcibly removed him from the Audi.  At this point, the plaintiff arrived on the scene and had a verbal exchange with the officers.[1]  Hubbs then threw a set of

---

[1] The parties dispute the content of this exchange. Kudish states in his Affidavit that Lina Haralambous was screaming as she approached, and that he yelled "someone take care of that!"  Kudish

2

handcuffs to Moskowitz and told him to handcuff the plaintiff.[2]  Id. ¶ 21.  Moskowitz handcuffed the plaintiff with hands behind her back and told her he was restraining her, not arresting her, and then walked with her and held her arm.  Id. ¶ 25.  The plaintiff testified that she slipped and fell in the snowbank and twisted her foot, and that Moskowitz "pulled [her] up from the handcuffs and they got tighter and he kept on pulling me."  Id. ¶ 28.  She further testified that she loudly stated, "you are hurting me!"  Id. ¶ 29.  The plaintiff testified that she could not see if anyone at the scene stopped and looked over to her because she was facing the other direction.  Id.

She then testified that the officer, whom the record identifies as Moskowitz, dragged her by the arm to her garage, notwithstanding her complaints that her foot was hurting, and asked her to go into the house; that when she declined, he walked her back to the scene and then back to her house; that he then asked her to go into the house; and that she then asked him if he had a search warrant and, when he responded no, told him to get off her property.  Id. ¶ 30-32.  At this point, the plaintiff testified that another officer, whom the record identifies as Special Agent Eric Ebrus,

---

Aff. ¶ 6.  Hubbs also testified that Lina Haralambous was screaming, "what are you doing to my son," and continued to scream and approach the officers.  Hubbs Aff. ¶ 6. Lina Haralambous testified that she asked the officers, "guys, what happened?" and that one of the officers responded, "stay right there or I'll shoot you," to which she responded, "go ahead, shoot me."  She also denies that she attempted to approach her son.  Pl.'s Loc. R. 56 Stmt., Statement of Material Facts ¶¶ 20, 21.

[2] The plaintiff was unable to identify which of the four officers present, namely Hubbs, Kudish, Moskowitz, and Ebrus, instructed the other officer to handcuff her, nor which officer handcuffed and then escorted her.  Among other evidence, Hubbs and Moskowitz both submitted sworn statements that Hubbs instructed Moskowitz to handcuff the plaintiff, and that Moskowitz handcuffed the plaintiff and then escorted her down the driveway.  See Hubbs Aff. ¶ 8; Moskowitz Aff. ¶8.   There is no evidence in the record to the contrary.  Further, paragraphs 21 and 25 of defendant's Local Rule 56(a)(1) Statement, which state that Detective Moskowitz handcuffed the plaintiff at Officer Hubbs' direction, are deemed admitted in light of plaintiff's responses, Pl.'s Loc. R. 56 Stmt. ¶¶ 21, 25, which "[do] not den[y] these assertions of fact and . . . offer[ ] no evidence to dispute their accuracy."  See Knight v. Hartford Police Dep't, No. 3:04CV969 (PCD), 2006 WL 1438649, at *4 (D. Conn. May 22, 2006).

appeared and that the two officers dragged her back to the scene in the driveway. Id. ¶ 33; Mot. Sum. Judg. Exh. C (Doc. No. 47-5), Affidavit of Matthew Moskowitz ("Moskowitz Aff.") ¶8; Reply Brief in Support of the Defendants' Motion for Summary Judgment in Part (Doc. No. 49) ("Rep.") at 6-7. The plaintiff testified that she was handcuffed for an hour, though she was not looking at her watch. Id. ¶ 34.

## II. STANDARD OF REVIEW

A motion for summary judgment is properly granted only if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir. 2011). Thus, the role of the district court in deciding a summary judgment motion "is to determine whether genuine issues of material fact exist for trial, not to make findings of fact." Id. In making this determination, the court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Garcia v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir. 2013).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010). Once the moving party has satisfied that burden, to defeat the motion "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "For summary judgment purposes, a 'genuine issue' exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor." Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co., 421 F. App'x 52, 53 (2d Cir. 2011); see also Rojas v. Roman Catholic Diocese of

Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (stating that the non-moving party must point to more than a mere "scintilla" of evidence in its favor). "[U]nsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

### III.    DISCUSSION

Haralambous's claims are based on alleged violations of her rights under the Fourth Amendment, which provides individuals with the right to be free from unreasonable seizure, including the right to be free from excessive force by a police officer in the course of a seizure. See Anderson v. Branen, 17 F.3d 552, 558-59 (2d Cir. 1994) (citing Graham v. Connor, 490 U.S. 386, 397 (1989).  Specifically, she claims that she was subjected to excessive force and unlawful seizure when she was handcuffed, detained, and moved around while she was handcuffed. Brief in Opposition to Motion for Partial Summary Judgment ("Opp.") (Doc. No. 48) at 1. For each of these claims, defendants argue that they are entitled to summary judgment because they were neither personally involved in the alleged violation, nor can be held liable for failure to intervene to prevent the alleged violation. Memorandum of Law in Support of the Defendant's Motion for Summary Judgment in Part (Doc. No. 47-1) ("Def.'s Mem.") at 1-2.

In order to be held liable for a plaintiff's section 1983 claim, an individually named defendant must have personal involvement in the alleged constitutional violation. Grullon v. City of New Haven, 720 F. 3d 133, 138 (2d Cir. 2013). Personal involvement has been defined by the Second Circuit "to mean direct participation, such

5

as personal participation by one who has knowledge of the facts that rendered the conduct illegal, or indirect participation, such as ordering or helping others to do the unlawful acts." Garnett v. City of New York, 2014 WL 3950904 at *7 (S.D.N.Y. Aug. 13, 2014) (citing Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotations omitted).

In addition, a police officer "has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." O'Neill v. Krzeminski, 839 F. 2d 9, 11 (2d Cir. 1988). An officer's failure to do so may be grounds for liability under § 1983. See Anderson, 17 F.3d 552, 557 (2d. Cir. 1994). However, in order for liability to attach, an officer must observe or have reason to know that an individual's constitutional right has been violated, and "there must have been a realistic opportunity to intervene to prevent the harm from occurring." Id. Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise. Id. "In evaluating a claim of failure to intervene, the court must look separately at different episodes of force that may, together, make up the plaintiff's claim." Jones v. City of Hartford, 285 F. Supp. 2d 174, 182 (D. Conn. 2003) (citing O'Neill, 839 F.2d at 11).

A.  Handcuffing and initial detention

As discussed previously, there is no evidence in the record to suggest that either of the defendants themselves physically handcuffed the plaintiff or moved her while she was handcuffed. Rather, it was Moskowitz who handcuffed the plaintiff and walked her to and from the driveway and the house. Plaintiff nevertheless alleges that the

6

evidence is sufficient to permit a jury to conclude that the defendants "actively participated in taking the plaintiff into custody and placing her in handcuffs." Id. at 5. Hubbs does not contest that he gave Moskowitz the handcuffs and directed him to handcuff the plaintiff, Def.'s Mem. at 11, and does not seek summary judgment on plaintiff's claims related to the handcuffing. As such, the court considers this claim only as to Kudish.

The only evidence of Kudish's participation in the handcuffing is his own sworn statement that, as he saw Lina Haralambous approaching while he was assisting Christopher Haralambous, he yelled "Someone take care of that!" Mot. Sum. Judg. Exh. B (Doc. No. 47-4), Affidavit of Michael Kudish ("Kudish Aff.") ¶ 6. This is insufficient to support a conclusion that Kudish either directly or indirectly participated in handcuffing the plaintiff. After seeing the plaintiff approaching, Kudish then worked to call in the incident over the police radio system. Def.'s Loc. R. 56(a)(1) Stmt. ¶ 18.[3] Kudish stated that he only learned later that Moskowitz had arrived on the scene and "handled" the plaintiff. Kudish Aff. ¶7. Hubbs, not Kudish, handed Moskowitz the handcuffs and directed him to handcuff the plaintiff. Def.'s Loc. R. 56(a)(1) Stmt. ¶ 21.[4] There is no other evidence to support a finding that Kudish was personally involved in the handcuffing of the plaintiff as required for liability under section 1983.

---

[3] Haralambous's Rule 56(a)(2) Statement states that she is unable to admit or deny this claim; thus, the court considers this assertion admitted. See Johnson v. Connecticut Dep't of Admin. Servs., 972 F. Supp. 2d 223, 229 (D. Conn. 2013) ("where the Plaintiff has neither admitted nor denied a fact and where the record supports such fact, those facts are deemed to be admitted.") aff'd, 588 Fed. App'x 71 (2d Cir. 2015). Further, she fails to provide a citation to evidence in the record in support of her statement. See D. Conn. Loc. R. 56(a)(3) ("failure to provide specific citations to evidence in the record . . . may result in the Court deeming certain facts that are supported by the evidence admitted.").

[4] See supra n. 2.

Additionally, even if the plaintiff's rights were violated by the handcuffing, there is no evidence from which a jury could find Kudish liable for a failure to intervene. First, the evidence is insufficient for a jury to conclude that Kudish observed or had reason to know that the plaintiff's constitutional rights had been violated by being handcuffed. Indeed, there is no evidence that Kudish was aware that Hubbs directed Moskowitz to handcuff the plaintiff until after the fact. While Kudish observed the plaintiff approaching, he then became occupied with calling in the incident over the radio.

Even assuming Kudish had knowledge of the handcuffing, there is no evidence showing that he had a realistic opportunity to intervene and prevent the harm from occurring. In support of her claim, the plaintiff points only to the fact that "all of these events took place within a relatively confined area." Opp. at 3. This is insufficient to support a finding that Kudish was aware that the plaintiff would be handcuffed and had a realistic opportunity to intervene and prevent it from happening before the handcuffing occurred. The initial handcuffing of the plaintiff "was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator." O'Neill, 839 F. 2d at 11-12. Thus, summary judgment is granted with regards to the plaintiff's claims against Kudish arising out of her handcuffing and initial detention.

     B.    <u>Excessive force while handcuffed</u>

Plaintiff argues that she was "dragged" while handcuffed, and that this violated her right to be free from excessive force. She further argues that both Kudish and Hubbs were able to intervene to prevent this violation. Both Kudish and Hubbs state that they never saw nor heard from the plaintiff after she was handcuffed, and thus

8

neither observed the alleged violation nor would have had a realistic opportunity to intervene.  Mot. Sum. Judg. Exh. A (Doc. No. 47-3), Affidavit of Brian Hubbs ("Hubbs Aff.") ¶ 8; Kudish Aff. ¶ 9.  However, taking all inferences in plaintiff's favor, whether or not Hubbs and Kudish observed the alleged violation is contested.  Haralambous testified that, as she was being led away from her son, she slipped in a snow bank and twisted her ankle, at which point the officer pulled her up by the handcuffs and continued to drag her by the arm notwithstanding her complaints that she was in pain.  Pl.'s Loc. R. 56 Stmt. ¶¶ 28-30.  She further testified that she loudly stated, "you are hurting me," as she was being pulled up from the handcuffs.  Id. ¶ 29.  The distance between the snow bank where plaintiff allegedly slipped and the scene where her son was being restrained is not clear from the record, but both appear to have been in the driveway and in front of the snow plow.  Given that both defendants appear to have been present on the scene, they could have observed the incident or heard the plaintiff's statement that she was injured.

However, even if Haralambous was pulled up and dragged by her handcuffs, and assuming that this violated her constitutional rights, there is no evidence from which a jury could conclude that Hubbs or Kudish had a realistic opportunity to intervene and prevent the violation from occurring.  Assuming Moskowitz did pull Haralambous up from the ground by her handcuffs, plaintiff has provided no evidence suggesting that either Hubbs or Kudish had enough time to intervene to prevent the violation.  See Rodriguez v. City of New York, 2012 WL 1658303, at *5 (S.D.N.Y. May 11, 2012) ("the mere fact that [the officer] was present for the entire incident does not, on its own, establish that he had either awareness of excessive force being used or an opportunity

to prevent it.")   At the time the incident allegedly occurred both defendants were at the scene with Christopher Haralambous.   On the plaintiff's facts, no reasonable jury could conclude that either Hubbs or Kudish could have intervened in sufficient time to prevent Moskowitz from pulling her up by the handcuffs.   See Jones, 285 F. Supp. 2d at 184 (no reasonable jury could infer that officers on the other side of vehicle from plaintiff could have intervened in sufficient time to stop "three to five kicks" where they occurred with such "rapid succession" that officers had "no realistic opportunity to prevent them"); Sash v. United States, 674 F.Supp.2d 531, 545 (S.D.N.Y. 2009) (no reasonable jury could conclude officers had a genuine opportunity to intervene where the "entire incident took less than thirty seconds"); Corley v. Shahid, 2015 WL 968715, at *6 (E.D.N.Y. Mar. 5, 2015) (collecting cases).   Thus, summary judgment is granted for both defendants as to plaintiff's excessive force claim based on her alleged treatment while handcuffed.

      C.     Prolonged detention

Finally, Haralambous alleges that both defendants violated her rights in failing to intervene when she was unlawfully detained without probable cause.   The court has already addressed the initial decision to handcuff the plaintiff, but understands the plaintiff's Complaint as alleging a separate violation based on the fact that she continued to be detained in handcuffs for a period of time after the initial seizure.   The plaintiff testified that, in total, she was in handcuffs for approximately an hour, and that the handcuffs were not removed until medical personnel arrived on scene and asked her to give them her medical card.   Mot. Sum. Judg. Exh. D (Doc. No. 47-6), Deposition of Lina Haralambous ("Pl.'s Dep."), Tr. 47:19-22.

Defendants again argue that they could not have intervened because they did not see the plaintiff again after their initial encounter with her. However, as discussed previously, despite defendants' statements to the contrary, a reasonable jury could infer that they were aware of the plaintiff's continued detention. During the time the plaintiff was detained, both Kudish and Hubbs were at the scene with Christopher Haralambous, located next to Haralambous's Audi. Hubbs Aff. ¶ 7, Kudish Aff. ¶ 6, 8. According to the plaintiff, during the approximate hour that she was handcuffed, she was walked from the scene in the driveway to her garage and then back to the scene twice, and then stood with another officer next to the Audi for at least five minutes, still handcuffed. Pl.'s Dep., Tr. 47:1-9.

Further, resolving all disputed facts and drawing all inferences in the plaintiff's favor, a reasonable jury could conclude that an hour-long detention in handcuffs was not objectively reasonable given the circumstances, thus violating her Fourth Amendment rights, and that Kudish and/or Hubbs observed or had reason to know of this violation. "A warrantless seizure is objectively reasonable only if legitimate law enforcement objectives outweigh the loss of liberty from the detention." Hollins v. City of New York, 2014 WL 836950 at *5-6 (S.D.N.Y. March 3, 2014) (citing Floriday v. Royer, 460 U.S. 491, 499-500 (1983); Michigan v. Summers, 452 U.S. 692, 697-98 (1981)). Both Kudish and Hubbs state that the reason for plaintiff's detention was officer safety. However, according to the version of facts most favorable to Haralambous, she did not yell or approach her son in any way, or otherwise pose a threat to the officers. It is also not contested that there were four officers on the scene, two of whom accompanied the plaintiff for most of the incident.

Finally, considering all the evidence, a reasonable jury could conclude that, during the hour that plaintiff alleges she was detained in handcuffs, Kudish and/or Hubbs had sufficient time to intervene and were capable of preventing the harm. Unlike the other alleged violations discussed previously, where the harm was occurring or had already occurred by the time the defendants would have been made aware of it, the duration of the plaintiff's detention could support an inference that, once the defendants became aware of the alleged violation, they had a reasonable opportunity to intervene to prevent it.  "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."  Anderson v. Branen, 17 F.3d at 557.

Reading all inferences in Haralambous's favor, a reasonable jury could conclude that Haralambous's continued detention violated her constitutional rights, that both Hubbs and Kudish observed or had reason to know of the violation, and had a realistic opportunity to intervene to prevent the harm from occurring.  Thus, summary judgment is denied as to both defendants on this claim.

## IV. CONCLUSION

The defendant's Motion for Summary Judgment in Part (Doc. No. 47) is hereby **GRANTED** in part and **DENIED** in part.  The court grants summary judgment to Kudish on the claims based on the initial handcuffing and detendion, and to both defendants as to excessive force based on treatment while handcuffed.  The case will proceed to trial on the remaining claims, namely: plaintiff's claims for false arrest and excessive force against Officer Hubbs based on her initial handcuffing and detention, and plaintiff's

13

claims against Officer Hubbs and Officer Kudish based on their failure to intervene in her continued detention, which plaintiff argues was in violation of her Fourth Amendment rights.

**SO ORDERED.**

Dated this 28th day of May, 2015 at New Haven, Connecticut.


                                              /s/ Janet C. Hall
                                              Janet C. Hall
                                              United States District Judge